Please call our next case. Case No. 24-1310 from the District of Minnesota, Jan Kuklenski v. Medtronic USA. All right. Mr. Neuville. Yes, Your Honor. You may proceed when you're ready. Thank you. May it please the Court, Counsel. I represent Jan Kuklenski, the appellant in this matter. That issue in this case is a question of statutory interpretation regarding Minnesota law for which a complete vacuum exists in terms of opinions by the Minnesota courts. The question is, what constitutes working in, or I should say works in, Minnesota for the purposes of the Minnesota Human Rights Act? We would start by saying that this case should be certified to the Minnesota Supreme Court. Prior to this decision, there was not any conflict within the District of Minnesota. This decision, followed by several more, have now created a conflict within the District of Minnesota that is likely to recur repeatedly, especially in the context of remote work. As a result, we think that this is one of those limited circumstances that constitutes this Court exercising its independent discretion to certify the question of what works in Minnesota means to the Minnesota Supreme Court. Regardless, on substance, what Medtronic and the District Court advance is an unworkable, touch-brass rule that cannot be squared with not only the District Court of Minnesota's precedent, but the reality of working in the modern era. It squares pretty well with the plain language. It uses works and resides in, which are both geographic. I think undoubtedly a word is known by its associates. It's really hard to reside in Minnesota if you live in Michigan. First, Your Honor, I would say that it uses the words works or resides in. The or is obviously operative. Some people will live in other states other than those that they work in. I think the Court is actually a good example of that. Even prior to the pandemic, this Court has seven, eight states. I forgot to count them. But the judges of this bench travel around from state to state, even though each of you are chambered in your own individual states. The Court is headquartered in St. Louis, even though none of you are chambered or reside there. Ms. Kuklinski, in the facts of this case, similarly, prior to the pandemic, for 22 years, worked for Medtronic, primarily living in, first, I think it was California, then Chicago, and ultimately Michigan. But why isn't the better, to get back to my question, why isn't the better reading, and you're right, I misspoke, it's works or resides in. But a word is still known by its associates under that canon. I know Minnesota applies that canon. And if one is geographic, why isn't the other one geographic, where you have to be present within the state either for work or because your house is here? Well, I think, and sorry, Your Honor, for not directly answering that question at first. I sort of glossed over this point. That is one interpretation. Geographic is one interpretation of works in, in particularly. But it's not the only one. And what the court is, or the district court did here, is favor that particular interpretation, despite the fact that there was this plethora of cases, I mean, at least five or six preceding it, that favored a different interpretation. That wasn't necessarily geographic, that looked at the totality of the circumstances, that examined six non-exclusive factors. And as a result. But didn't those all have some working in the state of Minnesota? In other words, it seemed to me that what the district court did here was determined that it, that no reasonable jury could conclude that, at least for this time period, regardless of the reason that your client had been working in Minnesota. So it seems there's just no contact physical with Minnesota. And the court plucked out of thin air the applicable relevant time frame and ignored the context of the COVID-19 pandemic.  I mean, what would you say the time frame is? Well, I don't think there is. Again, what the district of Minnesota was doing prior to this decision was looking at six non-exclusive factors that included time spent in Minnesota, actual geographic contact. And Ms. Kuklinski, but for the COVID-19 pandemic, certainly would have been in Minnesota. Most of, all of the Zoom meetings that she was doing, especially in her new role, required her to meet with people at the corporate office that, but for the pandemic, she would have been in Minnesota. And so. How much do you have to be in Minnesota to say that you're, you work in Minnesota? That's one of the, so in the prior, prior to Judge Toster's opinion in this case, there were a number of other district courts that, in the district of Minnesota, that looked at that question relevant to every other one of the non-six, or the six non-exclusive factors and said that it depends on the totality of the circumstances. It depends on what the other contexts were like. There's no particular answer. It's a case-by-case, in your view, case-by-case determination. Well, I think it's, not only is that my view, but I think that, that the district court of Minnesota was working with a much more workable rule in that view prior to this, this current patch of this decision. Was there really much pushback to that? So, so if there was enough working in Minnesota, and maybe you can't speak to this, but I just wonder if it was particularly controversial. In other words, here we've got a situation where she's not working at all for almost a couple years in Minnesota. And in the other cases, you know, I don't, I just wonder how much pushback from defendants in that, those other situations were in determining, well, they were in Minnesota, at least for a short period of time. Right. So, first of all, I think we were arguing that she was still working in Minnesota, right? We're not favoring exclusively the geographic component for that particular timeframe, especially in light of the COVID-19 pandemic. And I think one of the things that you said, Judge Kelly, that I want to jump on right away is that the court concluded that no reasonable jury could conclude that Ms. Kuklinski was working in Minnesota. Ms. Kuklinski, as the non-moving party, was entitled to inferences here, and it should be for the jury to decide. Especially in this context. Is that for the jury? I couldn't find any jury instructions on this particular issue. Is this something that would go to the jury? Have you ever taken this particular issue to a jury? I can't say that I have, but certainly if there's, if the, this is one of the reasons that I think the Minnesota Supreme Court, if it were to take this case, this question now and decide it, I think it would help establish that for us. What is the procedure here? Will there be, is this purely a matter of law? Is there, is there, is this a fact dispute? I think with the dearth of case law at present, what we're doing is flying by the seat of our pants from case to case. And I don't know that that's a workable solution. But aren't there analogies? I mean, that's the problem I have with certification. I mean, when I sat on the state Supreme Court, we heard workers' comp cases, where often it was employee versus independent. When the precise question, employee versus independent contractor, obviously we heard Minnesota Human Rights Act cases. We heard cases involving other employment statutes. And there seems to be a corpus of case law in Minnesota that could be helpful here. Is there a particular case law there? No, no. I'm just, I'm thinking, I'm thinking back to my time, which is that it's not as if this is a novel question. It's really what I'm getting at, that would need, that would need the Minnesota Supreme Court to weigh in. And on that point, Your Honor, up until yesterday, there was a Minnesota Whistleblower Act, or there was case law defining the, or interpreting the Minnesota Whistleblower Act on an essentially parallel question. And that case law also favored the prior precedent to Ms. Kuklinski's case, in that it was a context totality of the circumstances-based approach. Judge Doty reversed himself yesterday in a new opinion that I anticipate we'll file a 28-J letter in, or letter for, that now favors the approach that Judge Tostrud and Chief Judge Schultz have most recently applied in the Medtronic cases. Well, and I got to be honest. It seems like the test that the District of Minnesota came up pre-Judge Tostrud and Judge Schultz, both of whom I think basically agreed with each other later, doesn't resemble anything I remember when I was on the State Supreme Court, when you're talking about employer-employee. And if you look at the individual, some of the individual parts of the test, they seem very made up and not very on point. Like, for instance, did you receive training? I could have become an employee 45 years ago someplace and gotten training in Minnesota, but what does it have to do with whether I worked or resided in Minnesota at the time of any kind of adverse action? Right. Well, and remember that the Minnesota Human Rights Act doesn't apply solely to people who are currently employed. It applies to potential employees, applicants, right? So it's going to protect, like if you look at 363A.08, subdivision 2, you'll see there are three parentheses, 1, 2, and 3. 2 is that it prohibits an employer from discharging an employee. Clearly, that's at issue in this case. That's why we look to 363A.03 and the definitions, the relevant definitions of employee, for example. But there's also paren 3 in 363A.08, which makes clear that an employer is prohibited from, and it goes on to say, essentially discriminating against a person. It doesn't even use the word employee at that point, in essentially the material terms and conditions of employment. And so the point here being that the way that we've, in the past, had to interpret this has been a totality of the circumstances, because in some cases you'll have employees who are fairly new. In some cases, like Ms. Kuklinski's, you'll have someone who's been there for 22 years, and there's quite a lot in terms of the evidentiary record of what their job looked like. Well, wouldn't training really only be relevant? I mean, I'm trying to get at this because I don't know how relevant it is. If, you know, you were trained last week, last month, six months ago, eight months ago, but it becomes irrelevant in every other case. And so it's a pretty loosey-goosey totality of the circumstances test that doesn't yield a very clear answer. I don't think it does, or I don't think that it is loosey-goosey, Your Honor, but I also think that the rule that's advanced by the district court and by Medtronic is equally so. I mean, what constitutes working in, geographically, if that's what we're going to favor, Minnesota? Is it as simple as flying to the airport and working, you know, one day a month for an hour in the airport lounge? Is it as simple as flying over Minnesota from Toronto to L.A. weekly while commuting? I mean, there is a lot left to be determined, and that's why it cries out, these circumstances cry out for certification to the Minnesota Supreme Court for them to ultimately answer this question. And they inevitably will, and that's the other thing about what, you know, us being here today. This court, if it writes an opinion absent hearing from the Minnesota Supreme Court, it will inevitably be set aside by whatever the Minnesota Supreme Court determines, whether that's in line with, in agreement with, or not, it will be the precedential binding decision on this. Or we could have it influence, and they could end up following us to the extent that they haven't done that, you know, they haven't decided the case before. Sure. I'm by no means arguing that it's not, that the Eighth Circuit, you're not persuasive. You are very persuasive. What I'm saying in this case is that the Eighth Circuit is, or that the Minnesota Supreme Court is the ultimate arbiter of this question. You've mentioned a few times in argument and in your briefing the impact of the pandemic, and I think it's an interesting question because I think it forced a lot of us to rethink what work can be and where you can do the work that you're doing for your employer. But I wonder what that plays, how that plays into just reading the statute. So, I mean, I get your point, and I understand it, but can something like a pandemic impact how we interpret what a statute says and has always said and will say tomorrow? Absolutely. As the Minnesota Supreme Court said in Kenna, the Minnesota Human Rights Act is to be construed liberally and evolving with the societal norms and circumstances as they may change over time. The pandemic absolutely did that. Now, I think that Ms. Kuklinski is unique in the sense that she was already working in Minnesota while living in other places prior to the pandemic, but certainly now this is quite common. And I think that the facts of Ms. Kuklinski's case should be considered, and what transpired, the reason that she wasn't in the state, need to be considered at the summary judgment stage in a way that's favorable to her, not to the moving party, in this case Medtronic. If it's all right, I will reserve my balance of the time for rebuttal. All right, you may. Counsel, you may proceed. Thank you. May it please the court. For 22 months before her termination, Ms. Kuklinski did not set foot in Minnesota. She was not in Minnesota to talk to customers or other employees. She was not in Minnesota to perform any of her job duties. She was not in Minnesota at all. Based on the undisputed facts in this case, Ms. Kuklinski was not an employee, as the legislature chose to define it in the Minnesota Human Rights Act. That is, she was not an individual employed by an employer who resides or works in this state. I think the record shows she did, in fact, travel to Minnesota prior to this 22-month period. And what if there was also evidence that after the medical leave, post-pandemic, post-medical leave, that she would have been returning to that same schedule again? Does that change the mix? It does not change the mix, Your Honor. And I'll first say that those facts are not in the record. That is, there are no facts in the record about what Ms. Kuklinski would have done in the future. And I understand that. I'm trying to just get the outer edges of your argument. And I think the statute here governs, and it uses the present tense. It says that the employee must live or work in this state. So then how do you—and I understand that. But I'm struggling with sort of the folks who do just come in and out of Minnesota a handful of times a year. Would somebody—what's your limit on how much you have to be working in Minnesota to qualify as an employee who works in Minnesota? There has to be some limit, Your Honor. And I think, actually, you can look to Judge Schiltz and his words in the Walton case for a framework here to analyze this. There are some cases where it's going to be obvious that the person is an employee. They live or work in Minnesota, no questions. There are going to be some cases, like this case, where no question a reasonable fact finder could not determine that the person worked or lived in Minnesota. There may be some cases that are in a gray area. But there has to be, when we look at the language of the statute, some kind of physical presence, some kind of connection that has to be regular, repeated, ongoing. And what does that mean? And I push you a little bit because I think this is hard when you start thinking through a partial works in, right? I think maybe it's obvious you live in Wisconsin, but you drive over five days a week to Minnesota. But that's not what we have here, and I'm guessing that's not what we have in a lot of situations. And so, well, even if we take your position that this is an easy case, even if we take that for purposes of this question, there's a whole bunch in between. And I'm struggling with how you figure that out. There's a whole bunch of in between, Your Honor. And for those cases where it's a close call or where a jury could decide one way or another, those are the cases that go to the jury. Then how would the jury be instructed? So, okay, it's sometimes easy to say, well, for me anyway. Okay, well, that's a jury question. But then you stop and you think, well, what are you telling the jury to rely on? How are you telling the jury to decide whether or not an individual person like Ms. Kuklinski is actually an employee under the statute? For the purposes of a termination claim under the Minnesota Human Rights Act, you're telling the jury two things. First, you're telling the jury that there has to be some kind of physical presence in Minnesota. It is not enough for the person to call Minnesota or be on videoconferencing in Minnesota or have a supervisor in Minnesota, but that person is physically present in a different state. So you tell the jury, number one, there has to be a physical presence. Number two, there has to be that connection, that physical presence, as it relates to the allegations in the case. So what is the allegedly discriminatory conduct? And that is the relevant time period. So one jury might find that one day a year is enough. Another jury may find that 20 days isn't enough. So it's really just a potential employee by potential employee determination once you send it to the jury? It could be, Your Honor. Once you send it to the jury, yes, of course it's up to the jury to decide, in the same way that in other employment cases we give standards to juries all the time and they have to decide, does this conduct rise to the level? So take the severe or pervasive standard in a harassment case. One jury may say, yes, this conduct was severe or pervasive. Another jury may say it isn't. But the court is the gating location first. The court says, in some cases, the jury doesn't get to make that determination. That's what we have here. The court has said already, in this case, there is no reasonable jury who could determine that Ms. Kuklenski worked in Minnesota. And that's exactly correct when we look at the language that the legislature chose to use. It chose to define employee by location, by connecting resides or works in Minnesota. Both of those things have to connect to Minnesota. And that's also consistent with what the legislature does here. The legislature governs, gets to decide the laws within the territorial bounds of this state. The legislature doesn't get to legislate about what goes on in other states without running afoul of constitutional issues like the Commerce Clause, the Dormant Commerce Clause. And that's why, when the legislature is going to reach out into another state, the legislature has to specifically say that. The legislature didn't do that here. There is no language in the Minnesota Human Rights Act that says the legislature intends for there to be an extraterritorial reach outside of the physical bounds of Minnesota into another state. And to pick up on Judge Strauss, one of your questions earlier, there are other Minnesota employment laws that do just that. The workers' compensation law in Minnesota has a provision about extraterritoriality. The legislature considered it. They wrote it down. The legislature chose not to do that here in the context of the Minnesota Human Rights Act. And that also makes sense because employees who live or work in other states are protected by other states' laws. Ms. Kuklinski, during the relevant time period of this case, worked in Michigan. She lived in Michigan. She also worked in two other states. She worked in Illinois for a period of time. She worked in California for a period of time. She could have availed herself of the anti-discrimination statutes in those states. She also could have availed herself of federal law, which applies to all employees, right? But she chose not to do that. She chose to try to come and get the protection of the Minnesota Human Rights Act. And maybe this is too far afield, but raising the issue of the possibility that she could file a suit, say, in Michigan, do you know by chance how Michigan addresses this? In other words, you could be in limbo, so to speak, if Minnesota says, nope, you're not working in Minnesota under our statute, but then Michigan says, you're working for a Minnesota company. You may be sitting here in your home office, but you're connected to Minnesota. I don't know the answer to that question, Your Honor. I believe, but I could be wrong, that Michigan law also looks at the employee where they live and where they work, but I don't think the language is exactly the same as Minnesota's language. But even if someone like Ms. Kuklinski couldn't get the protection of either state's law, they still have the protection of federal law, which, again, Ms. Kuklinski chose not to raise on her disability discrimination claims here. Instead, she asserted a cause of action under the Minnesota Human Rights Act. The problem for her is that she simply does not meet the definition of employee as the legislature chose to define it. And I'll add, Your Honor, that the legislature made a specific choice to focus on the employee and where the employee lives or works. It defined employer much more broadly. An employer is any person who employs an employee. So the Minnesota Human Rights Act can imply to an employer that not only is based in a different state, but has no physical offices here in Minnesota. And in the context of the pandemic and how folks work remotely, I think that actually proves our point here. There are a category of employees who get the protection of Minnesota law because they physically are here living in Minnesota, even if they're working for a company that is headquartered elsewhere. So the reverse of this. The reverse of this. You switch Michigan and Minnesota. That's exactly right, Your Honor. If Ms. Kuklinski had chosen, after 2020, instead of being at her home in Michigan or instead of spending a few months in California to come live and work out of a home overlooking Lake Superior, but still wasn't going into the corporate headquarters, she would get the benefit of the Minnesota Human Rights Act because she would work in Minnesota. She didn't do that. She didn't set foot in this state for almost two years before she brought her claim. I guess I was saying the switch would be, if I understand your description of the Minnesota definition of employer, if she were working remotely in Minnesota for a Michigan company, she would get the protections of the Minnesota Human Rights Act. That is correct. She would be working in Minnesota, and so she would get the protections of the Minnesota Human Rights Act, regardless of where her employer is located. I'll add that it is not enough, and I think I mentioned this earlier, for her to call in from a different state or for her to be on a Zoom call from a different state because that's just not the customary and normal usage when we think about where an employee works. I work in Minnesota, regardless of whether I'm on the phone with someone who happens to be in New York or even some other country. Unless the Court has any other questions about the definition of employee, I'll turn now to whether this Court should certify the question to the Minnesota Supreme Court. The answer here is no. Ms. Kuklinski did not request certification at the district court level until after she had lost summary judgment, even though the district court's decision on the motion to dismiss flagged this as a potential issue, and even though she had now lost and understood the court's ruling on the summary judgment motion. Second, and perhaps more importantly, Minnesota law already provides guidance to this Court about how to interpret its statutes. You do a plain language analysis. You apply the law to the facts of this case. This Court is certainly able to do that, as are all of the district courts. Now, as Judge Schultz said, there may be cases where there is a gray area. Those are the cases that go to the jury. That's not this case. In short, this Court and district courts have the tools that they need to analyze the definition of works in Minnesota and to apply them to the unique facts of this case, just as the district court did here. This Court should affirm summary judgment because applying the facts of this case to the Minnesota Human Rights Act, Ms. Kuklinski did not meet the definition of employee as the legislature intended it. Thank you. All right. Thank you very much. All right. You may proceed. I am very glad my colleague brought up the both Michigan law and the or maybe that was you, Judge Kelly, but both Michigan law and the works in or resides in and the protection that it provides for remote workers who live in Minnesota but perhaps work for a company in, say, Michigan or New York or some other state. There is no reciprocal language in Michigan law. And so it is not clear. It is far from clear that Michigan law would protect her. In fact, it seems that that's not the case. Regardless, for 22 years, she worked for her employer here in Minnesota. The only constant in her life was Minnesota and Medtronic as she moved from various other states and doing various things. Twenty percent of her time was spent in Minnesota because that's where her colleagues were, that's where her meetings were, and but for the pandemic, and there is evidence in the record of this. It's in the separate appendix of Medtronic, and I'm not going to be able to find the page right away, but there's a, in the order denying the motion to set aside or alter the judgment, Judge Tostred specifically acknowledges that there had been stuff in the record indicating that Medtronic had not allowed its employees to be in the office from March 2020 all the way up until the end of 2021. In fact, the evidence that's in the record is they were going to be brought back two weeks after Ms. Kuklinski was put out of her job. And so I think that there is evidence there. With regards to what the legislature could have done, well, the legislature could have used the present progressive if they wanted to truly mean you have to be working right now at this moment in time or some arbitrary recent time frame. They could have said the employee is working in Minnesota. They didn't. They used the simple progressive, and as we explained in the briefing, that is customary, it's habitual, and certainly over 22 years it was customary for Ms. Kuklinski to work in Minnesota. Unless the court has anything else, I am out of time. All right. Thank you very much, and thank you, counsel, for your argument. The case has been well argued, and it is submitted. We will render a decision as soon as possible. And with that, counsel, you may stand aside.